## Commonwealth ex rel. Reed *v.* Maroney, Appellant.

Argued December 12, 1960.

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for appellant.

*Edward T. Bresnan,* with him *Maerz & Bresnan,* for appellee.

OPINION BY WOODSIDE, J., March 22, 1961:

The prisoner, James Reed, questions here the right of the Deputy Commissioner for Treatment to transfer him from the State Correctional Institution at Camp Hill (formerly called the Pennsylvania Industrial School) to another state penal institution.

Reed was sentenced on September 5, 1958, to the Pennsylvania Industrial School for an indeterminate term on a charge of burglary. On February 19, 1959, the Deputy Commissioner for Treatment transferred him to the State Correctional Institution at Graterford and on August 26, 1959, from that institution to the State Correctional Institution at Pittsburgh. The latter two institutions were formerly known as penitentiaries.

Reed filed a writ of habeas corpus in the Court of Common Pleas of Montgomery County, from which county he had been sentenced, requesting the court to direct the prison authorities to transfer him back to Camp Hill. He contended there was no statutory authority to transfer him from that institution. The court below accepted the prisoner's contention and ordered the warden of the institution at Pittsburgh to transfer him to the institution at Camp Hill. The Attorney General, on behalf of the prison authorities, appealed to this Court.

The Attorney General argues that the question here presented should have been raised by mandamus and not by habeas corpus. We shall pass upon the merits of the case, but that should not be looked upon as an approval of habeas corpus as the proper procedure. See *Commonwealth ex rel. Salerno v. Banmiller*, 189 Pa. Superior Ct. 156, 149 A. 2d 501 (1959).

The State Correctional Institution at Camp Hill, or the Pennsylvania Industrial School at White Hill, or the Pennsylvania Industrial Reformatory at Huntingdon, as it has been variously called, is an institution

for young offenders created by the Act of April 28, 1887, P. L. 63.

From the beginning, it was recognized that in order to maintain an atmosphere conducive to the training and reformation of the youthful and less hardened offenders, it was necessary to set standards of admissions, *and* to remove from the institution those who could not adjust to its program. Therefore, in section 10 of the Act of 1887, authority was given to the board of managers to transfer from the institution those who apparently were incorrigible, or whose presence in the reformatory appeared to be seriously detrimental to the well being of the institution. The institution was, and is, primarily a school, and no school can be successfully operated without the power to expel those who insist upon disrupting its decorum. Those who cannot profit by the school's educational and rehabilitation program should not be permitted to disrupt the program for others.

Under the authority of the above section, first the board of managers, and then the Secretary of Welfare, and then the board of trustees made regular use of the power to remove those whose presence was detrimental to the well being of the institution, and to place them in other penal institutions more appropriate for their reformation.

After the prison riots in the Pittsburgh and Rockview institutions in January, 1953, the Governor appointed a committee of distinguished penologists and officials to study our penal system.[1] In its report the committee recommended the following: "18. All classification, transfers and retransfers, *including inmates*

---

[1] The committee was composed of Jacob L. Devers, General, USA Retired, Chairman; Joseph E. Ragen, Warden, Joliet (Ill.) State Prison; John C. Burke, Warden, Wisconsin State Prison; William Witherow, Industrialist; Burton R. Laub, Judge, Court of Common Pleas, Erie, and Edward R. Cass, Penologist.

*at White Hill,* should be under the Deputy Commissioner for Treatment. This Deputy should be in charge of both classification centers and correlate their work." (p. 7) (Emphasis ours.) The report further stated on page 20: "The statutory procedure relating to commitments to Huntingdon, White Hill, Muncy and Morganza is, in itself, a type of classification. This need not be disturbed, *but* the Commissioner of Correction should have the transfer power among *all* state correctional institutions *without reservation,* and in accord with classification policies." (Emphasis ours.) As a result of these recommendations a legislative program was enacted in 1953 involving amendments to numerous acts, and the enactment of several new statutes.

The power to make transfers by the board of trustees existing in section 10 of the Act of 1887, supra, was removed by amendment, and the power to make transfers between state institutions was placed in the Deputy Commissioner for Treatment. The limitations upon transfers imposed by section 10 were removed.

Section 4 of the Act of July 29, 1953, P. L. 1435, 61 P.S. §914 provides, inter alia, as follows: "The Deputy Commissioner for Treatment shall have complete authority to make transfers from any State institution under the control and supervision of the Department of Justice to any other State institution under said Department's control and supervision."

As the institutions at Camp Hill, Graterford and Pittsburgh are all under the control and supervision of the Department of Justice, it would seem clear that the Deputy Commissioner for Treatment has specific legislative authority to transfer the relator from Camp Hill to Graterford and from Graterford to Pittsburgh.

Counsel, who was appointed by the court below to represent the relator, in a thorough analysis of the statutes and an ingenious argument, insists that the above provision does not relate to offenders sentenced to the

Camp Hill institution. This contention is based primarily upon the placement of the above provision in the statutory program. The first part of the same section of the act cited above relates to commitments to the Diagnostic and Classification Centers and transfers therefrom, and the third section provides that persons sentenced to the Camp Hill institution shall not be sent to the Centers. Counsel for appellee argues that as the above quoted provision was clearly not intended to relate to the institution for women at Muncy, it was likewise not intended to relate to the institution for youth at Camp Hill, but only to the prisoners who were committed to the Centers. The answer to this contention can be found by comparing section 4, supra, with recommendation 18, supra, of the Devers Committee Report. It will immediately appear that the section was drafted to carry out that recommendation.

However, the forceful argument of counsel leads us to conclude that the intent of the legislature was not as clearly expressed as it might have been. We must, therefore, ascertain the intent "by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history;" Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551. Applying these tests, the intent becomes clearer.

Since the creation of the separate institution for youth, the necessity for transfers was recognized by the legislature, approved by the courts, and extensively used by prison authorities. *Commonwealth ex rel. Clawges v. Claudy*, 173 Pa. Superior Ct. 410, 415, 98 A. 2d 225 (1953); *Commonwealth ex rel. Popovich v.*

*Claudy*, 170 Pa. Superior Ct. 482, 484, 87 A. 2d 489 (1952).

Examined as a whole, the penal reform program adopted by the legislature in 1953 aimed at facilitating the transfers of prisoners between institutions. There is no reason to assume that the legislature intended to make an exception in the case of the institution at Camp Hill.

As stated above, the power to remove the incorrigible and recalcitrant prisoner, who was disrupting the school's program and corrupting its younger and more innocent inmates, was given to prison authorities since the school was first opened. There is no reason to assume that the legislature intended to reverse this policy.

In 1953, the legislature was carrying out most of the recommendations of the Devers Committee. There is no reason to assume that the legislature desired to change an accepted policy by restricting transfers instead of facilitating them when such change would be in direct conflict with the recommendations. It is not reasonable to conclude that the legislature intended the above transfer provision to be limited in the manner suggested by the appellee.

The operation of the school is geared to the less hardened offender between the ages of 15 and 23. Few of its inmates are kept initially more than two years, and none may be sentenced to the institution after his 21st birthday. But, under the parole system, a boy committed at 20, may, through paroles and recommitments as a convicted parole violator, be under sentence to Camp Hill when he is 30 years old. Furthermore, some boys in their early twenties (the petitioner is 22) prove to be too wise in the ways of crime to be among young first offenders without doing great harm to these more innocent inmates.

There are an unlimited number of reasons to transfer prisoners from one institution to another. As stated in *Peiffer Petition*, 193 Pa. Superior Ct. 476, 478, 166 A. 2d 325 (1960), "A prisoner may be assigned or transferred to a particular penal institution because he should be separated from companions who may delay his rehabilitation, or because he requires close custody or is entitled to the relative freedom of a minimum security institution, or because he must be protected from his enemies, or because he can receive better treatment for an illness, or because certain prison employment or education should be made available to him, or for an almost unlimited number of other reasons." Because the Camp Hill institution is a school for youthful offenders, there are more reasons to transfer inmates from that institution than from any other institution. It is not reasonable to assume that the legislature, which always permitted transfer from the school, would now create an intolerable situation there by making impossible the removal of the serious troublemakers, while it was facilitating the transfer of prisoners between the other institutions.

We are of the opinion that when the legislature gave the Deputy Commissioner for Treatment authority to make transfers from any state institution under the control of the Department of Justice, it intended to include the institution at Camp Hill among such institutions.

The prisoner is serving a six year indeterminate sentence, and the Pennsylvania Board of Parole has authority to release him on parole at this time, or it may keep him incarcerated until the end of the six year term regardless of whether his imprisonment is at Camp Hill or one of the other institutions. In the petition which he personally prepared, the relator contends that being in a penitentiary type institution, he is entitled to a minimum and maximum sentence. Fortunately

for him, there is no merit in his contention. If a minimum sentence were now imposed, to be effective on the date of sentence, it could not increase the authority of the board to release him, but could restrict that authority.

Order reversed.